1          UNITED STATES DISTRICT COURT

2            DISTRICT OF MINNESOTA

3

4    ------------------------------------------------------------

5                               )
     United States of America,   )  Case No. 13-CR-253 (DWF/TNL)
6                               )
              Plaintiff,         )
7                               )
        vs.                      )  St. Paul, Minnesota
8                               )  March 13, 2015
     Mustafa Ahmed Mohamed,      )  2:09 p.m.
9                               )
              Defendant.         )
10   ------------------------------------------------------

11              BEFORE **THE HONORABLE DONOVAN W. FRANK**

12             UNITED STATES DISTRICT COURT JUDGE

13                   **SENTENCING HEARING**

14   APPEARANCES:

15   For the Plaintiff:      U.S. Attorney's Office
                             BRADLEY M. ENDICOTT, AUSA
16                           600 U.S. Courthouse
                             300 South Fourth Street
17                           Minneapolis, Minnesota 55415

18   For the Defendant:      Rivers Law Firm, P.A.
                             BRUCE M. RIVERS, ESQ.
19                           701 Fourth Avenue South, Suite 300
                             Minneapolis, Minnesota 55415

20

21

22   Official Court Reporter:  JEANNE M. ANDERSON, RMR-RPR
                               Suite 146 U.S. Courthouse
23                             316 North Robert Street
                               St. Paul, Minnesota 55101

24

25        Proceedings recorded by mechanical stenography;
     transcript produced by computer.

1       **P R O C E E D I N G S**

2                **IN OPEN COURT**

3           THE COURT:  You may all be seated.  Thank you.

4    And I will just indicate, as counsel may be aware of the

5    reason we are in Judge Magnuson's courtroom, so the lawyers

6    in my case, in its sixth week over here -- we are down

7    today, so we don't have to move all of their things out.  We

8    just lock that down.  So, I have been using other Judges'

9    courtrooms.

10          So, the Court will call, United States versus

11   Mohamed.  Why don't we have introductions, first, of

12   counsel.  We can start with the Government's counsel?

13          MR. ENDICOTT:  Good afternoon, Your Honor.

14   Bradley Endicott for the United States.

15          MR. RIVERS:  Good afternoon, Your Honor.  Bruce

16   Rivers on behalf of Mr. Mohamed, who is present and behind

17   me.

18          THE COURT:  Good afternoon, Mr. Mohamed.

19          THE DEFENDANT:  Good afternoon.

20          THE COURT:  I will represent to you that I have

21   had a chance to read all submissions, including the position

22   memorandums of each party.  I will also make a suggestion on

23   how we proceed with the case this afternoon.

24          To the extent there remains any issue with the

25   computation of the Guidelines, and there may be with the

1     issue of the stolen gun status with respect to the firearm,

2     I can hear any arguments, additional arguments on that.

3     Because obviously as the parties are aware, they have a

4     right to know what the starting point is for the Court

5     before we begin sentencing, what the applicable guidelines

6     are.

7              And once I have done that, I will proceed with

8     separate argument on the 3553(a) factors.  Is that

9     acceptable to the Government?

10             MR. ENDICOTT:  Yes, Your Honor.

11             THE COURT:  Mr. Rivers?

12             MR. RIVERS:  It is, Your Honor.

13             THE COURT:  All right.  Bear with me one moment?

14             (Discussion off the record.)

15             She has to retrieve something.  I left my legal

16    pad on my desk.  Mr. Rivers -- and your client can remain

17    seated for the time being, if he wishes because most

18    people -- there are always exceptions -- don't like standing

19    at the podium if they don't have to for a long period.

20             I will hear any additional argument with respect

21    to the firearm status issue.

22             MR. RIVERS:  Your Honor, to begin with, as I think

23    I have demonstrated in my position pleading, and you can

24    glean from the presentence investigation when my client was

25    incarcerated and compare that to when the firearm was

1    stolen, my client was clearly not implicated in the theft of

2    that firearm, number one.  He was in custody serving a

3    sentence on a burglary.

4          And what is even more interesting in this case is

5    after my client was arrested, Mr. Isaak in this case was one

6    of the gentlemen down there.  He took ownership of the gun.

7    And so it is my contention that my client really had

8    momentary possession of the firearm.  There is no evidence

9    to suggest other than that particular afternoon that he

10   possessed it.

11         The guidelines are advisory.  And I think that

12   applying that enhancement would be unjust in this case.  And

13   so, that was my main reason for objecting to it.

14         THE COURT:  All right.  I will hear any additional

15   argument from the Government.

16         MR. ENDICOTT:  Your Honor, according to the U.S.

17   Sentencing Guidelines, Section 2K2.1, Application Note 8(b),

18   the provision for the firearm enhancement applies whether or

19   not the Defendant knew or didn't know, or had reason to

20   believe that the firearm was stolen.

21         In this case, I don't know if this is really an

22   argument as far as whether the two points should be factored

23   into the Guidelines, but rather how the two points should be

24   assessed in coming up with the overall sentence.  And I

25   guess we don't have an argument against that, so to speak,

1    because you will take all of those factors into

2    consideration.

3            But, as far as calculating the Guidelines, sir, I

4    think the Guidelines are quite clear that the two points

5    should apply in this situation given that there is no

6    knowledge requirement for the stolen firearms enhancement.

7            THE COURT:  Mr. Rivers, anything further?

8            MR. RIVERS:  No, Your Honor.

9            THE COURT:  Well, I will go ahead and make a

10   decision on that, and then we will go to the, kind of, the

11   arguments that both counsel spent some time on.  Well,

12   what -- no matter where the Judge starts -- what is a fair

13   sentence in the case?

14           I will first indicate something that is not

15   necessarily unique to this case, but -- and maybe it will be

16   something that both parties will disagree with.  I am going

17   to go ahead and make a decision on this with respect to that

18   provision and two-level enhancement, and then I will explain

19   what that decision is in just a moment.

20           I, frankly -- and I will make it clear for the

21   record for all purposes, that whether the advisory

22   guidelines are 77 to 96 months, which is what -- without

23   that enhancement, is what they would be, or whether they are

24   92 to 115 months, I believe unless -- with everything I have

25   read and know, and of course I am going to hear counsel out,

1    I believe at the end of the day under the 3553(a) factors, I

2    am going to end up at the same place no matter where I

3    start.  And we will get into that.

4         And so, that doesn't mean it's any -- it's not an

5    important issue to all parties.  But, on the one hand I

6    think it's crystal clear what the Guideline enhancement is

7    and why they have made knowledge -- maybe knowledge or lack

8    thereof should play a part in the -- under the 3553(a)

9    factors; and what, if anything, a particular person in this

10   case, Mr. Mohamed, knew.

11        On the other hand, I think it is equally clear

12   that the enhancement, for the reasons the Government's

13   attorney said, applies either way.  And if the Court feels

14   that, well, it certainly is relevant with respect to nature

15   of punishment and relative culpability what the sentence

16   should be, I think that is absolutely correct.

17        And with that in mind, and then there is kind of a

18   middle ground, not to spend a lot of time on that, a middle

19   ground that, well, even assuming that somebody didn't know

20   at the time, and even assuming it's exactly as defense has

21   suggested, well, the guideline is set up for the Court not

22   to speculate about what knowledge that the person came into

23   and when they came into it about, well, I wonder how much

24   somebody did know about the history of the firearm, even if

25   they initially didn't steal it or buy it.

1          So, I think with all of those in mind, even though

2     I have already kind of said, I belive whether I start at

3     70 -- the Guideline level of 77 or 92, I believe I will be

4     ending up at the same place.

5          Noting the defense objection, I am going to impose

6     that enhancement.  And that creates a Total Offense Level of

7     24, based upon a Criminal History Category of five, I know

8     we will hear some issues about that, as well.  That creates

9     an advisory guideline of 92 to 115 months, and also a one to

10    three-year period of supervision and a $200 special

11    assessment.

12         And I didn't mention the fine, but that would be a

13    fine of $10,000 to $100,000.  And with that in mind, I will

14    hear from counsel.  We can start with defense counsel on,

15    well, given all of the circumstances, here is why I believe

16    you should impose no more than a 77-month sentence.  So,

17    counsel?

18         MR. RIVERS:  Your Honor, if we look at what this

19    case started out as, a lot of these gun cases start out --

20    the gun is ancillary to another case.  So, even a 924 count

21    that is consecutive to a drug count, for example.  And we

22    don't have that in this case.  We gave a few young Somali

23    men who were in a garage, some of which were complained of

24    smoking marijuana.

25         When we had the suppression hearing, there was no

1    marijuana found on my client, nor was he ever accused of

2    smoking marijuana.  He wasn't committing any other crime at

3    the time.

4              And then the other thing I would like the Court to

5    take notice of is the lack of bullets in this case.  In this

6    case, I believe there was one or maybe two bullets in the

7    magazine.  And they were separated from the firearm.

8              At no time was anybody in jeopardy in this case.

9    And it is my contention, Your Honor, that the Defendant

10   possessed that gun momentarily; that, you know, when the

11   police came, somebody threw it to him, he hung on to it for

12   a minute, threw it under the car in a panic and there he

13   sits.  And he has taken responsibility for it.

14             He struggled with pleading in this case, as you

15   recall, Judge.  We got up to the day of trial and that is

16   why he has got a two-level reduction for acceptance of

17   responsibility.  And I think he was confused because -- he's

18   confused on a number of levels.  When we got the initial

19   PSI, it only had one of the felonies included, so the

20   guideline calculation was lower, and then now it is higher.

21             And so he feels a little like, well, they are

22   piling on, so to speak.  And that is because there was an

23   error in the calculation early on.  But, the other argument

24   that I have, Your Honor, is if you look at his criminal

25   history, I believe his criminal history is overstated.  He

1    is getting quite a number of points for fairly low-level

2    misdemeanor cases that, by themselves, would not have

3    registered any points.  But, they were registered as points

4    because when he went to prison on a burglary case, they just

5    executed everything.  And because they executed everything,

6    he gets credit for that time.

7              And he does not have a -- he doesn't have any

8    person crimes.  He doesn't have any crimes of violence that

9    are crimes that are qualifying for this particular case.

10             THE COURT:  Well, burglary in the first degree

11   would clearly qualify, especially the facts -- even though

12   the Judge gave him everything but a written apology in the

13   sentence, 78 days, and probation.  He was eventually

14   violated twice, which I was going to ask you about.  But,

15   that burglary in the first degree charge back in 2006 would,

16   I think, be considered by most, apart from the Federal --

17             MR. RIVERS:  That is true.

18             THE COURT:  -- other than the Federal Courts, the

19   federal law has a very broad definition, frankly speaking,

20   of violent felony --

21             MR. RIVERS:  I meant to say with that exception.

22             THE COURT:  Yes, but what's -- and I didn't mean

23   to interrupt you, but what is most important for me to

24   understand about a series of violations, and eventually then

25   there was this sweetheart deal, I would say, on the burglary

1    charge, a stay of -- four years, probation, 78 days on a

2    burglary in the first degree, and then an initial revocation

3    of one year.

4           And then when the -- then another burglary

5    happens, and then there was a total -- then they execute the

6    whole sentence on the original one, 48 months and then run

7    concurrent the 18 months on the less serious burglary and

8    the new one.

9           What is most important -- and then, of course,

10   here, as we know, this happened shortly after your client

11   was released on the sex trafficking charge a few months

12   later.

13          What is most important for me to grasp about that?

14   Because I think you can be quite certain the Government's

15   lawyer will address that when --

16          MR. RIVERS:  And I am not saying any of those

17   things shouldn't be taken into consideration.  I think they

18   should bear their full weight.

19          What I am saying is that the minor offenses, the

20   trespassing, for example, he gets two points for

21   trespassing.  He gets two points for the gross misdemeanor,

22   false information to police.  Those would normally not carry

23   any time in State Court.  But because -- and so those are

24   the only ones that I am really quibbling with, Your Honor.

25   And he is really on the cusp, you know, of a five, and that

 1    is why I thought he should be considered a four.

 2            And the other thing, Your Honor, I would ask, and

 3    I know depending upon the particular case, you have used it

 4    sparingly, but he has been in custody for going on two years

 5    on this case.  This is a 2013 case.  And I would ask you to

 6    factor in some hard time credit, if possible.

 7            My client has been a model prisoner for the last

 8    year and a half, almost two years.  He has cooperated with

 9    me in every respect.  He has been respectful of this Court

10    even when he -- you know, a lot of times we can get up to a

11    problem -- which I thought we were getting into just before

12    trial.  He was very respectful of this Court and wasn't

13    obstinate.  He just needed some explaining.  And so, I am

14    hopeful that you won't see him back here again.

15            The other issue, Judge, that I would like to

16    address briefly, and I don't know if Your Honor has the

17    power to do anything about it.  I think you do.  And that is

18    there is mention of this case that is up on appeal with the

19    Sixth Circuit in this presentence investigation.  It is a

20    criminal sexual conduct type case in its nature.  And I

21    don't know if we can seal that from the Bureau of Prisons or

22    not.  But, I know even the mention of those kind of things

23    have an impact on programming when he does go to prison.

24            So, Your Honor, it is for these reasons that I

25    believe that a sentence of no more than 77 months, and then

1    credit off of that for the hard time is where I would like

2    you to start.

3              THE COURT:  All right.  Do you know if your client

4    wishes to address the Court?  Sir, you have a right to make

5    any comments, if you want.  You don't have to say anything,

6    if you wish.  Some defendants talk at these hearings, some

7    don't.

8              The rule, as you may be aware, and of course the

9    lawyers are aware, is the Court can't consider it in a bad

10   or negative way if a defendant in any case chooses not to

11   add something to what their lawyer has said.  So, up to you,

12   sir.

13             THE DEFENDANT:  Your Honor, I just wanted to

14   apologize for my mistakes, and I apologize to the

15   Government.  And I am taking full responsibility for my

16   actions, and I hope to learn from my mistakes.  Thank you,

17   that is all.

18             THE COURT:  All right, thank you.  Mr. Rivers,

19   were you -- when you were talking on appeal, are you talking

20   about the case that is pending in Tennessee, that appeal?

21             MR. RIVERS:  Right.  That case was dismissed, and

22   the Government appealed that case.  That is the one I am

23   talking about.

24             THE COURT:  Okay, so that case -- that case, in

25   other words, that your client was released on out in the

1    Middle District, that case has been dismissed against your

2    client?

3              MR. RIVERS:  It has, Your Honor.

4              THE COURT:  I don't know if the Government is

5    aware of that or -- I don't think if it has anybody has been

6    notified in the Probation Department, here, or the U.S.

7    Attorney.  That doesn't mean we can't --

8              MR. RIVERS:  While they are talking, Your Honor?

9              THE COURT:  Yes.

10             MR. RIVERS:  I did speak to his Public Defender in

11   Tennessee and confirmed that it had been -- the Judge threw

12   that case out and the Government appealed it.  And I don't

13   know what the status of the appeal is.

14             THE COURT:  All right, fair enough.  And I will

15   address the concern you have at the appropriate time on the

16   content of the PSR.  And I can say it won't -- it is not the

17   situation that the sentence is one thing with that case in

18   and one thing without it.

19             So, I will deal with that.  I will hear from the

20   Government's lawyer.  You may be seated if you want, Mr.

21   Rivers.

22             MR. RIVERS:  Thank you.

23             MR. ENDICOTT:  Your Honor, good afternoon.

24             THE COURT:  Good afternoon.

25             MR. ENDICOTT:  As stated in our position paper,

1    the Government here is seeking a 104-month Guideline

2    sentence, which isn't at the top of the Guidelines, but

3    rather the middle of the Guidelines that we calculated that

4    are applicable in this case for the following reasons under

5    the 3553(a) factors.

6         Your Honor, first in consideration of the nature

7    and the circumstance of the offense, the Government feels

8    that -- or would contend that this was not a momentary or

9    transitory possession, as the facts that are borne out in

10   the Government's position paper.

11        The Defendant had several furtive movements.  He

12   went around a car, took this firearm and put it underneath

13   another car, which actually caused a -- potentially, a very

14   dangerous situation for not only the Defendant, himself, but

15   his friends that were with him, as well as the police

16   officers involved.

17        So, Your Honor, we would again argue that all of

18   those things together show that this is not a momentary

19   possession, but a rather purposeful possession.  And the

20   Government is not aware of any facts where there was another

21   person that threw the firearm to Mr. Mohamed.  It is our

22   understanding that Mr. Mohamed had this firearm from the

23   very first police encounter until he hid that firearm

24   underneath the car in an attempt to hide it from the police.

25   In addressing the issue, Your Honor, regarding the lack of

1    ammunition in this case, here the Defendant has pled guilty

2    to not only the possession of a firearm, but as well as the

3    possession of ammunition.

4         The ammunition in this case, some of that was

5    found inside of the firearm, in the magazine.  In the

6    firearm there were two rounds inside of that handgun, and

7    there was also one round that did fall out of the

8    Defendant's pocket as he was placed in the squad car.

9         But, it is quite clear that two of those rounds

10   were inside of that firearm when he was arrested.  But,

11   altogether, Your Honor, we believe that this is not just a

12   simple possession.  The possession here involved the

13   Defendant trying to hide a firearm from the police, which

14   again created a very dangerous situation for the Defendant

15   and everyone else in that parking garage.  And we would ask

16   that you take that into consideration.  But as far as the

17   most weighty factors, Your Honor, the Government would

18   submit that the history and the characteristics of the

19   Defendant, as well as the need to protect the public from

20   future crimes of the Defendant are the two most weighty

21   factors in this case.

22        Here the Defendant is 26 years old.  But, even

23   with that young age, the Defendant has racked up quite a

24   criminal history.  In 2008 there is a felony conviction for

25   tampering with a motor vehicle.

1          Also, in 2008, there is a burglary in the third

2     degree of an auto parts store.  And in 2007 there was a

3     first degree burglary which took place in a home that

4     belonged to a female victim.  And in that burglary the

5     female was physically assaulted during that burglary.  And

6     that would certainly qualify, as the Court put it, as a

7     personal crime.

8          When the Defendant committed this offense, as

9     well, he was also on pretrial release under very clear

10    conditions of what he could and could not do.

11         He was currently under indictment for conspiracy

12    to commit sex trafficking of children by force.  And while

13    under that indictment and on pretrial release, he was found

14    with this firearm.

15         In consideration, Your Honor, too, of the 2000

16    burglary, it seems like the Defendant kind of got a

17    sweetheart deal with that probationary sentence.

18         THE COURT:  That would be a sweetheart deal.

19         MR. ENDICOTT:  And even with that, it seems up

20    until now the message hasn't really kind of sunk in with the

21    Defendant.

22         As stated before, he has three rather -- or two

23    violent felonies.  And he is essentially one felony away

24    from becoming an ACC the next time, if and when he does have

25    a firearm.  And really, Your Honor, I guess our argument

1    there is that the Defendant had his chances, he had that

2    sweetheart deal, and he was also under clear instructions

3    when he was on pretrial release from the Middle District of

4    Tennessee.  And even with that, that message hasn't sunk in.

5    So, we would actually argue the opposite.

6            As far as the criminal history goes, we would

7    argue that it would be understated in this instance because

8    of the past lenient sentences that the Defendant was been

9    given in these instances.

10           Also, Your Honor, you know, of course the

11   Defendant has not been convicted of the crime that he was

12   indicted for in the Middle District of Tennessee.  Our

13   understanding is that that case is still alive.  I think it

14   is under interlocutory appeal.  That is what our

15   understanding is, is that I think the Government is

16   appealing that dismissal.  So, from our understanding, that

17   case is still live, but I can follow-up with the Court again

18   after this hearing if the Court deems it necessary.

19           But, we do have a clear -- we do have somewhat of

20   a concern here given the victim and the burglary, given the

21   nature of the offense that he was under indictment for

22   involving female children.

23           There is somewhat of a serious concern for

24   protecting other future victims should the Defendant be

25   released too soon.  So, with all of those things in

1    consideration, Your Honor, we would ask that the Defendant

2    be sentenced to 104 months.

3              THE COURT:  I will hear any additional argument in

4    rebuttal, if you wish, from defense?

5              MR. RIVERS:  Just with respect to the Tennessee

6    case, Your Honor, it was a multi-defendant case.  And my

7    understanding from talking to the Public Defender in that

8    case, it was dismissed.  They really didn't have any

9    evidence against my client.  And in fact I don't even think

10   he was in the jurisdiction at the time.  So, I don't believe

11   that is proper for any consideration in this case.

12             THE COURT:  You may be seated if you wish.  And

13   what I will say to both parties is rather than speculate,

14   while it is relevant to the Court that Mr. Mohamed was on

15   pretrial release conditions when this occurred, I won't

16   speculate about that case in terms of whether guilty, not

17   guilty, charged, not charged, dismissed, appealed.  It

18   plays -- with the exception of someone being on pretrial

19   release conditions, and then this happening, because that

20   isn't something the Court can ignore.  Even assuming -- no

21   matter what has happened with the charge, it plays no role

22   in how I will sentence today with respect to making any

23   assumptions about, well, is there a pending charge out there

24   or isn't there?  That will not play a role.  And to that

25   extent, while I don't think that -- while I don't think that

1      the reference in the presentence report will play a role

2      with the Bureau of Prisons, but I can't guaranty that, I am

3      just going to direct the probation officer, rather than get

4      into an issue of, well, interlocutory appeal, appeal,

5      dismissed, et cetera, et cetera, I think we will just remove

6      it from the -- I will remove it from the presentence report

7      when it goes to the Bureau of Prisons.

8                So, where does that leave us with the sentence?  I

9      will explain what I am going to do and why.  And then as the

10     lawyers know, it just takes a minute or two to impose the

11     sentence, itself.  Then we will talk about the placement.

12               I will say a couple of things.  Whether I would

13     end up under a strict application of the Guidelines and --

14     in other words, whether the level should be a Criminal

15     History Category III or IV, or V, in part because of the

16     misdemeanors, I actually respectfully stated, I think, that

17     no matter what category I am at, it doesn't capture how

18     serious, one, a couple of these offenses were.  And even

19     more -- almost more important to the Court, frankly, than

20     the seriousness of especially the burglaries in the current

21     offense before me is -- and it is not a legal term, but

22     whether it was an incredible, great plea bargain, or

23     whatever, sadly it looks like -- and I say it respectfully

24     to you, Mr. Mohamed, I don't think anyone is stacking on,

25     but I don't think -- for reasons I don't quite understand, I

1    don't think we have been able to reach you.  Because this

2    burglary in the first degree, which is the most serious form

3    of burglary under state law was a stayed sentence with time

4    served, and then there was a violation with another

5    burglary.

6            And then while recently released, this offense

7    occurred.  And I believe -- so, I don't really know, and it

8    doesn't look like even though there has been extensive,

9    historically, at least, alleged to be marijuana use, it

10   doesn't really look like that played a role in the most

11   recent offense, maybe it did in others.  But, nobody, maybe

12   to your credit, has used that as an explanation.

13           When I look at what is that sentence that will

14   promote respect for the law, sufficient but not greater than

15   necessary to do that, and also be careful not to create any

16   unwarranted sentencing -- the fancy phrase is unwarranted

17   sentencing disparities, but then also look at the "D" word,

18   that there should be a better word for it, deterrence.  One

19   is, making sure I can reach you; but secondly, in the

20   interest of the public, I think anything less than 98 months

21   will not promote respect for the law, and that is whether I

22   start at an adjusted level of 22, Criminal History Category

23   III or IV, I can't see myself -- and I have taken into

24   account -- the lawyers know I am one of the few Judges that

25   will give some additional time off, because the Bureau won't

1    on this hard time, because there has been no appeal to the

2    Eighth Circuit on that issue.  Because I feel it fits under

3    nature of punishment, and I can't ignore that.

4            If it wasn't for that more difficult time, I would

5    be at least at 104 months, frankly speaking.  So, even

6    though it is less than the Government wanted, more than the

7    Defense, I believe that anything less than 98 months will

8    not address the proper sentencing factors.

9            So, if we could have counsel come to the bench?

10   Mr. Mohamed, if you want to join your lawyer, please?  And

11   then we will talk about -- then we will talk about a

12   facility in just a moment.

13           As a sentence of this law and judgment of the

14   Court, I commit you to the custody of the Bureau of Prisons

15   for a period of 98 months.  I impose no fine, given your

16   financial circumstances.  And are there any other forfeiture

17   issues, firearms or anything?

18           MR. RIVERS:  I don't believe so, Your Honor.

19           THE COURT:  I do sentence you to a term of three

20   years of supervised release.  And since maybe -- I will say

21   this to you, maybe you won't believe a word I say, but that

22   is up to you.  Some people have this idea that we don't care

23   or -- and I don't think people pile on.  I actually thought

24   it was that the likelihood of a jury coming back with

25   anything but a guilty verdict on the possession charge on

1    the facts were -- and we could just look at what has

2    happened recently, because even though it is true, a lot of

3    Guidelines are coming down on drug cases and stuff, they

4    aren't doing so on any of the firearm cases because of --

5    for a lot of issues.

6              So, you can think as you will, but let me give you

7    a couple of positive things, even though you're probably

8    very upset about the sentence.  That is, one, two out of

9    three people that we sentence in Minnesota in Federal Court

10   to prison, and when they come out never return.  They don't

11   violate.

12             Now, the Minnesota State Court statistics are

13   about -- they are double that, two out of three people do

14   return to court.  And there are a lot of different reasons

15   for that.

16             And then secondly, 94.6 percent of all defendants

17   that we sentence that return from prison are employed as of

18   today.  So, I mean, the idea that there is no hope, that

19   does not -- I still have a responsibility to impose a fair

20   sentence, take into account public safety and all other

21   issues.  You owe me nothing, of course, but I think you

22   should take a look at kind of where you are at, take a look

23   at some of the programming inside of the federal prison

24   walls and make a decision you will be in that group of two

25   out of three that chooses not to return.

1      And I don't know that a lot of people believe it,

2   but you can ask your lawyer in private, the large majority

3   of our probation officers, and why I think we have one of

4   highest -- or lowest rates of recidivism in the United

5   States, we are in the top five states in the country -- it

6   isn't the Judges.  It is not us, it is Probation.  It is

7   everybody else.  They will enforce the rules, for sure, but

8   they don't give up on people, either.  And so -- because

9   that is part of our job.

10      So, here are the conditions of your supervised

11   release.  First, the first condition that is mandatory, it

12   will -- I predict it will never happen.  If it does, it will

13   be the first time in my 16 years here.  For it to happen,

14   the Probation Department and your case manager with the

15   Bureau of Prisons will have just not talked to you and made

16   a release plan.  That has never happened in the time I have

17   been here.

18      So, what I mean by that is if nobody has talked to

19   you, you must report to a probation officer within three

20   days of your release, but I predict it will all be set up as

21   you're being released from prison.  Second, you shall not

22   commit any crimes, be they federal, state or local.  Third,

23   you shall not illegally possess a controlled substance,

24   unless something is prescribed by a doctor.

25      And some people have asked me, well, that probably

1    doesn't include marijuana.  Yes, it does.  So, unless a

2    doctor prescribes marijuana, until the federal law changes,

3    and I predict it won't with respect to this, because some

4    people have asked:  Well, what if I am living in a state

5    where they have legalized small amounts of marijuana?  Then

6    you better check with your probation officer, because I

7    predict that won't be changing in the distant future.

8              But, apart from that, you will be tested once, as

9    every federal defendant is coming out of prison within 15

10   days, and two additional times after that.

11             You shall not possess a firearm, ammunition,

12   destructive device or other weapon.  And as your lawyer can

13   tell you, the definition of possession is very broad and the

14   laws are not going to change with respect to firearms.  And

15   so, you owe it to yourself to make sure that not only you

16   don't have them on your person, but whether you're in a car,

17   an apartment, a house, make sure that anybody around you

18   that has a weapon -- they are putting you in harm's way,

19   because constructive possession is that wide.

20             Every federal defendant since October of 2004 must

21   submit to a DNA sample for criminal identification purposes.

22   Probation will set that up for you.  We will, because of

23   what was said, even though I am not claiming this was a

24   drug-related or marijuana offense, I will direct until

25   somebody evaluates you and says no identifiable problem,

1    that you participate in a problem for substance abuse as

2    approved by Probation.  You ask me about RDAP when we get

3    done here in a moment, because if there is an identifiable

4    problem, and oftentimes the State and Federal Courts are

5    properly criticized for not screening for mental health and

6    drug issues, and then that makes the door come open more

7    frequently, and that includes everything from inpatient to

8    outpatient to support group work, getting sponsors.  We

9    won't substitute our judgment for an expert, or an assessor,

10   but we will evaluate that.

11          If you're not employed upon release, you will

12   participate in our work program and work up to 20 hours at

13   community service work, participate in any job fairs, other

14   employment-related activities.

15          And like I say, 94.6 percent of our people

16   currently on supervision are employed.  Because is it true

17   that there is a fair number of employers who won't hire a

18   convicted felon?  Yes.  But, there's increasing numbers who

19   do, and they call us, they call Probation and say -- because

20   they know that if people are on supervision, they are

21   working with their probation officer, they are reliable, and

22   we actually -- not we, I don't mean me, but Probation gets

23   calls from contractors saying:  Can you send over six, ten

24   employees, people?  We have jobs for them.  That happens

25   these days.

1    For yourself, I direct that you participate in an

2    educational program, including make a good faith effort to

3    get a GED or a high school diploma.  I don't think you have

4    done that yet, sir, have you?

5    THE DEFENDANT:  Well, Your Honor, I am in the

6    process of doing that.

7    THE COURT:  And you owe that to yourself.  And I

8    will tell you one quick story that since I have firsthand

9    experience with it, even -- and I grew up in a rural area

10   of -- very rural area of Minnesota.  But, even though my Dad

11   was the second youngest of three brothers, and the second

12   youngest of seven children -- he had four sisters.  He had

13   to quit school and work in eighth grade and work the farm.

14   And he married the farm girl next door, so I have a very

15   young-looking 83-year-old mother.  But, the fact is he was a

16   very smart, decent man, but people would say:  Oh, no GED,

17   no high school diploma.  They would make stereotype

18   assumptions about him, all untrue, not accurate.  So I

19   watched that myself, growing up as a boy and a young man in

20   a small rural town in the state.  So, I saw that happen.

21   So, you owe it to yourself to do this, because people will

22   make assumptions about it.  It is not fair.  But, you do

23   that for yourself.

24   I impose a $200 special assessment for the Crime

25   Victims Fund.  That is not subject to suspension or waiver

1   and that is in every case.

2          I will set that on payments of $25 a month

3   starting sixty days after you are released from prison.  And

4   then if you're working in what is called a UNICOR or

5   non-UNICOR program inside of the prison walls, they will --

6   I will require you to pay $25 quarterly towards that

7   assessment, because there are two different types of

8   employment.  Some of the prisons have that, some do not.

9          Before we get to the issue of placement, counsel,

10  you have a right to take an appeal from the case and the

11  sentence.  If you can't afford to hire a lawyer, one will be

12  appointed to represent you at the public's expense.  And the

13  notice of appeal must be filed within 14 days after I file

14  this judgment, which will be filed on -- probably not this

15  afternoon, on Monday.

16         And your lawyer gets a copy because it goes to

17  Texas.  And it will take Texas -- they do everybody's -- the

18  Bureau down there, and it will take them two to three weeks

19  to make a decision.  That is about what it has been running

20  in terms of -- because we can make a recommendation, and we

21  will talk about that right now.  But, they make the final

22  decisions.

23         We can sometimes predict what they might do in

24  what we have seen, but they are not under an obligation -- a

25  lot of us wish they were -- to follow our recommendations.

 1    So, Mr. Rivers, do you have a recommendation to make?

 2            MR. RIVERS:  He would like to stay in Minnesota,

 3    if possible, Your Honor.

 4            THE COURT:  I can recommend Sandstone.  I doubt

 5    that the Government will oppose that?

 6            MR. ENDICOTT:  No objection.

 7            THE COURT:  I think there's -- and even though

 8    they don't consult me, they don't consult Probation, we all

 9    find out together.  Ms. Wickenheiser, I am thinking that it

10    might be more likely he might be approved for Oxford -- I

11    will recommend Sandstone.  I am just being upfront if you

12    say, well, I thought the Judge recommended -- it is possible

13    you will get Sandstone.  And actually both Sandstone and

14    Oxford, Wisconsin, which would be the next closest, which I

15    think would most certainly be approved, they both have the

16    RDAP Program, as well.

17            THE PROBATION OFFICER:  Yes, Your Honor.

18            THE COURT:  I'm sorry to use the initials,

19    Residential Drug Alcohol Treatment Program.  Would you like

20    me to recommend that, Mr. Rivers?

21            MR. RIVERS:  I do, Your Honor.

22            THE COURT:  You owe it to yourself to give that a

23    try, Mr. Mohamed.  So I will recommend Sandstone.  They do

24    have similar programings in both places, so I will recommend

25    Sandstone.  We won't find out for two to three weeks.

 1          And then they will compute the amount of time you

 2     have been in custody.  And they must get it right most of

 3     the time, because they do a couple of things.  They subtract

 4     that off, and you don't get as much good time.  It is a

 5     little less than half of what you get under state of

 6     Minnesota "good time" rules.

 7          But, they will compute your good time, then they

 8     will take off the time you've been in custody.  Then there

 9     is another federal law that states in addition to that, they

10     can be released into the community.  They can take off up

11     above that 10 percent of the sentence imposed, and it can

12     never be more than an additional one year.  And they will

13     give you a target release date soon after you are there to

14     say, here is the date if you qualify for all of the good

15     time.

16          Now, you will also find out, and I didn't make any

17     assumption one way or the other, and very few judges do.

18     Some people ask questions about, well, we've heard that if

19     we participate in the Residential Drug Alcohol Treatment

20     Program in addition to normal good time there is an

21     additional one year off.

22          That is true; however, I believe you will find out

23     under the Federal Regulations, and it has nothing to do with

24     the position anybody in this room including me takes,

25     because there is a firearm involved in a charge, I believe

1   you will learn that you don't qualify for that extra time

2   off.  But, I would still urge you to consider participating

3   in that and any other programming.  And I think you have a

4   good chance of -- I have seen a number of people do

5   vocational training and do their GED inside of the prison

6   walls.

7            So, Mr. Rivers, anything else at this time?

8            MR. RIVERS:  No, Your Honor.

9            THE COURT:  Any questions of me, Mr. Mohamed?

10           THE DEFENDANT:  No, Your Honor.

11           THE COURT:  Anything further by the Government?

12           MR. ENDICOTT:  Just a few things we would like to

13  clarify for the record, Your Honor.  I realize -- well,

14  first addressing the forfeitures, I don't think, just for

15  the record, I don't think there is any contesting of the

16  forfeiture of the firearms and ammunition involved in this

17  case.  Those are the only physical items involved here.

18           And also for the record, I believe my memory may

19  have failed me, and I may have misspoke during argument as

20  far as the magazine.  The facts in the PSR and the

21  Government's position paper is correct.

22           THE COURT:  Right, right.

23           MR. ENDICOTT:  The gun was found underneath the

24  car, but the magazine was found in the jacket pocket, not in

25  the gun.  So, I just wanted to clarify that the PSR is

1    correct, Your Honor.

2              THE COURT:  Anything further, Mr. Rivers?

3              MR. RIVERS:  No, Your Honor.

4              THE COURT:  And do you need to see, Ms.

5    Wickenheiser, Mr. Mohamed or counsel for anything here?

6              THE PROBATION OFFICER:  No, Your Honor.

7              THE COURT:  All right.  We are adjourned.  And

8    then what I will do is, I'm just going to ask, Penny, if you

9    would just remove that paragraph on the -- so I am not going

10   to speculate about Tennessee.  I don't think it will affect

11   the placement, but let's just remove that before it is sent

12   down to the Bureau of Prisons.

13             THE PROBATION OFFICER:  Yes, Your Honor.

14             THE COURT:  All right.  We are adjourned.

15             (Adjournment.)

16                        *     *     *

17

18             I, Jeanne M. Anderson, certify that the foregoing

19   is a correct transcript from the record of proceedings in

20   the above-entitled matter.

21

22

23             Certified by:   s/ Jeanne M. Anderson
                               Jeanne M. Anderson, RMR-RPR
24                             Official Court Reporter

25